**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT JACKSON**
**OCTOBER SESSION, 1997**

FILED

March 18, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )          No. 02C01-9612-CR-00449
       Appellee              )
                             )          SHELBY COUNTY
vs.                          )
                             )          Hon. JOHN P. COLTON, JR., Judge
DANIEL D. NAUGHTON, SR.,     )
                             )          (Aggravated Child Abuse)
       Appellant             )


For the Appellant:                    For the Appellee:

**A C Wharton**                        **John Knox Walkup**
Public Defender                        Attorney General and Reporter

**Tony N. Brayton**                    **Elizabeth T. Ryan**
Asst. Public Defender                  Assistant Attorney General
201 Poplar St., Suite 201              Criminal Justice Division
Memphis, TN  38103                     450 James Robertson Parkway
                                       Nashville, TN 37243-0493

                                       **William L. Gibbons**
                                       District Attorney General

                                       **Robert Carter**
                                       Asst. District Attorney General
                                       Criminal Justice Complex, Suite 301
                                       201 Poplar Street
                                       Memphis, TN  38103


OPINION FILED: _____

CONVICTION AFFIRMED; SENTENCE MODIFIED


**David G. Hayes**
Judge

## OPINION

The appellant, Daniel D. Naughton, was found guilty of one count of aggravated child abuse by a Shelby County jury. Following this verdict, the trial court imposed the maximum sentence of twelve years confinement in the Tennessee Department of Correction. In this appeal as of right, the appellant raises the following issues:

I. Whether the evidence is sufficient to support the jury's verdict;

II. Whether the trial court erroneously permitted the introduction of hearsay testimony; and

III. Whether the trial court's imposition of a twelve year sentence was excessive.

After a review of the record and the applicable law, we affirm the judgment of the trial court, but, for reasons discussed herein, the appellant's sentence is modified to reflect a term of nine years in the Department of Correction. This case is remanded to the trial court for entry of judgment consistent with this opinion.

## Background

At approximately 3:00 a.m. on November 30, 1991, the appellant, a Navy seaman, took his eleven week old son to the emergency room of Millington Naval Hospital. When the appellant arrived, the victim was crying inconsolably. The child was first examined by Dr. Richard O'Donnell, an expert in pediatric emergency medicine. Dr. O'Donnell testified that the appellant had told him that the child had fallen out of his stroller onto the floor. He further testified that the fact that the child could not be consoled was a "red flag" that something of a serious physical nature had happened to the infant.

2

Upon examination, Dr. O'Donnell discovered that the child's upper right thigh bone looked distorted. He further discovered a discolored area on the child's chest that looked like a bruise. Dr. O'Donnell testified that the bruise had appeared to have the shape of an adult hand. After x-raying the child, Dr. O'Donnell determined that the right thigh bone had been completely fractured. He testified that the fracture was "fresh," meaning that it had occurred within the last twelve hours, most likely within the last five to six hours. Dr. O'Donnell testified that a great deal of force had to have caused the fracture. He further testified that the child would have been in a lot of pain from the injury. Because of the nature of the injuries, Dr. O'Donnell alerted the proper authorities about possible child abuse.

The possibility of abuse was investigated by Hershal Jones, who at the time was a sergeant with the Millington Police Department, and by Gail Jackson Beasley, a special agent with the Naval Criminal Investigative Service. Beasley testified that she had spoken to Dr. O'Donnell and that she had been told the child had likely been abused. Beasley then questioned the appellant as to what had happened to the child. The appellant gave Beasley a statement and the statement was read to the jury at trial. In his statement, the appellant related that he and his wife had been watching videos until about 2:00 a.m. when his wife left the house in order to show a girlfriend her new hairstyle. He said that the victim had been sleeping in his stroller in the living room. The appellant explained that, around 2:20 a.m., he left the living room to go to the bathroom. While in the bathroom, he heard his son "chuckle," heard a faint thump and then heard the stroller fall. He further stated that he emerged from the bathroom to find his two-year old daughter trying to pick up the stroller. The defendant began to examine the child and noticed that his right leg felt warm and tight and that he "felt the middle of the bone move a little." Thus, he decided to take the child to the emergency room. His wife arrived at the hospital a short time later.

3

Because the naval hospital was not equipped to handle injuries to small children, the victim was transferred to Le Bonheur Children's Medical Center in Memphis for further treatment. While there, he was examined by Dr. Robert V. Walling. Dr. Walling testified before the court as an expert in pediatric child abuse. Dr. Walling testified that during his examination of the victim, he discovered unexplained bruising about the face, chest and arm. He further found that the thigh bone and collar bone had been fractured along with several ribs. The child had also suffered a "buckle fracture" on his wrist. Dr. Walling testified that numerous ribs were broken and that the rib fractures as well as the wrist fracture had been caused by external force. He further testified that a significant impact had been the cause of the broken thigh bone. Dr. Walling stated that the impact would have had to have been much greater than the impact of the child's own body weight falling onto a surface of less than six feet away. He further testified that the injuries suffered by the victim had been nonaccidental and had been most likely caused by some form of abuse.

Dr. Thomas F. Boulden, a radiologist at Le Bonheur, testified as an expert in the field of pediatric radiology. He testified that he had studied the x-rays of the victim and had determined that the fracture to the thigh bone was typical of a fracture caused by a direct blow. He further testified that a child's fall could not have resulted in that type of injury. Dr. Boulden testified that the "buckle fracture" on the victim's wrist was a peculiar injury for such a young child. Generally, that type of injury is seen in an older child who has attempted to prevent a fall by catching himself with his hands. As to the rib fractures, Dr. Boulden testified that six of the right ribs had been fractured while four of the left had also been fractured. He testified that such fractures are typically caused by squeezing the rib cage.

Dr. Boulden testified that he had also studied x-rays taken at the victim's birth. He detected no injuries to the child at that time. Dr. Boulden stated that

4

abuse had been the cause of the victim's injuries and that the multiple fractures had been caused by multiple mechanisms over time. He further stated that it would have been apparent by the child's behavior that the child was in pain.

The appellant offered no proof, and the jury returned a guilty verdict.

## I. Sufficiency of the Evidence

The appellant argues that the evidence is insufficient to support his conviction. Specifically, he contends that his conviction was based entirely on circumstantial evidence as there were no witnesses to the alleged crime. In essence, the appellant argues that the "finger of guilt" does not point unerringly to him as the perpetrator of this crime.

Initially, a defendant is cloaked with the presumption of innocence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). However, a jury conviction removes this presumption of innocence and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. Id. In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence,

5

circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Circumstantial evidence alone may be sufficient to support a conviction. See State v. Buttrey, 756 S.W.2d 718, 821 (Tenn. Crim. App. 1988); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); State v. Gilliam, No. 01C01-9603-CC-00105 (Tenn. Crim. App. at Nashville, May 7, 1997) (*for publication*). However, if a conviction is based purely on circumstantial evidence, the facts and circumstances must be so overwhelming as to exclude any other explanation except for the defendant's guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987); Cooper, 736 S.W.2d at 129. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the [appellant] is the one who committed the crime." Tharpe, 726 S.W.2d at 896. When reviewing the sufficiency of circumstantial evidence, this Court must remember that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." Gilliam, No. 01C01-9603-CC-00105 (citations omitted).

Before the jury could find the appellant guilty of aggravated child abuse, the State was required to prove that the appellant committed the act of child abuse, as defined in Tenn. Code Ann. § 39-15-401 (1991),[1] which resulted in serious bodily injury to the child.[2] See Tenn. Code Ann. § 39-15-402 (1991). In the present case,

---

[1]Tenn. Code Ann. § 39-15-401(a) makes it an offense for a person to "knowingly other than by accidental means, treat[] a child under eighteen years of age in such a manner as to inflict injury or neglect[] such a child so as to adversely affect the child's health and welfare. . . ."

[2]"Serious bodily injury" is defined as "bodily injury which involves:
(A) A substantial risk of death;
(B) Protracted unconsciousness;
(C) Extreme physical pain;
(D) Protracted or obvious disfigurement; or
(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty."

Tenn. Code Ann. § 39-11-106(a)(33) (1991).

there is no dispute that the infant was the victim of abuse and that the infant suffered serious bodily injury in the form of several fractured bones which caused him extreme physical pain. Thus, the only question is whether the appellant is the perpetrator of the abuse.

The evidence established that the eleven week old child was in the primary care of the appellant and his wife, the child's mother. At the time of the injury, however, the appellant, by his own admission, alone was supervising the child and his two year old daughter. The appellant explained that the injury to the victim's leg resulted from the stroller tipping over. The testimony of medical experts contradicted this explanation, rather, the medical proof found that the injuries sustained resulted from a direct blow applied by a "lot of force." The appellant also conceded that the leg injury occurred immediately preceding the initial trip to the emergency room for treatment. From these facts and circumstances, a rational jury could draw no other inference save the guilt of the appellant. See State v. Crawford, 470 S.W.2d 610, 613 (Tenn. 1971). Thus, we conclude that, when viewed in the light most favorable to the State, the evidence presented at trial was sufficient to support the findings by the trier of fact finding that the appellant committed aggravated child abuse beyond a reasonable doubt. Tenn. R. App. P. 13(e).

## II. Hearsay Evidence

The appellant next contends that the trial court erred in admitting hearsay evidence. Specifically, he argues that the court impermissibly allowed Special Agent Beasley to repeat a statement Dr. O'Donnell had made to her in an effort to bolster the doctor's credibility, *i.e.*, that Dr. O'Donnell had told her that he suspected child abuse as the cause of the victim's injuries.

At trial, Dr. O'Donnell testified that he completed the initial examination of the victim at Millington Naval Hospital. After examining the victim, Dr. O'Donnell determined that the victim had suffered a traumatic mid-shaft fracture of the right femur and needed to be transferred to Le Bonheur Children's Hospital for further medical attention. He also remarked that, because of the nature of the victim's injuries, he "could not rule out the possibility of foul play." On cross-examination, Dr. O'Donnell was confronted with an assessment diagnosis form he completed on November 30, 1991, which contained the words "rule out foul play." Despite defense attempts to establish otherwise, Dr. O'Donnell maintained that these words signified that he could not rule out the possibility of foul play.

Sergeant Hershal Jones testified that he had spoken with Dr. O'Donnell during the course of his investigation. On cross-examination, he recalled that Dr. O'Donnell had stated that "he could not say that this was child abuse."

On direct examination of Special Agent Gail Beasley, the State attempted to inquire as to statements made by Dr. O'Donnell to Agent Beasley in the course of her investigation of this case. Whereupon, defense counsel objected claiming that O'Donnell's statements to Beasley were hearsay and, therefore, inadmissible. The State responded that they were trying to rehabilitate O'Donnell's testimony, which had been questioned during the testimony of Sergeant Jones. The court permitted Agent Beasley to continue. Agent Beasley testified that Dr. O'Donnell reported to her that he had suspected child abuse.

Although, generally, a prior consistent statement is not admissible to bolster a witness' credibility, it is well-established in this state that a prior consistent statement is admissible to rehabilitate a witness after insinuations of recent fabrication or deliberate falsehood or to respond to impeachment by a prior inconsistent statement. See Farmer v. State, 296 S.W.2d 879, 882 (Tenn. 1956); State v.

8

Tizard, 897 S.W.2d 732, 746 (Tenn. Crim. App. 1994); State v. Meeks, 867 S.W.2d 361, 374 (Tenn. Crim. App. 1993). See also NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 803(1.1).3, at 509-510 & n.61 (3d ed. 1995). However, the prior consistent statement must have been made before the motive to lie arose or before the inconsistent statement was made. NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 803(1.1).3, at 509-510 & n.61.

Despite the appellant's assertion, Dr. O'Donnell was not impeached by his assessment diagnosis form, although clearly that was defense counsel's purpose in introducing the form. Nonetheless, this background does permit the use of the prior consistent statement to Agent Beasley to negate defense counsel's attack, albeit unsuccessful, on Dr. O'Donnell's credibility. See Meeks, 867 S.W.2d at 374. Additionally, Sergeant Johnson, on cross-examination, related a statement of Dr. O'Donnell, received during the course of his investigation, which was inconsistent with Dr. O'Donnell's in-court testimony. Again, evidence of Dr. O'Donnell's prior consistent statement to Agent Beasley is admissible to rehabilitate the witness after introduction of the prior inconsistent statement. See Tizard, 897 S.W.2d at 746. The trial court permitted introduction of Dr. O'Donnell's prior consistent statement through the testimony of Agent Beasley for the limited purpose of corroborating Dr. O'Donnell's in-court testimony. Such introduction was proper. A prior consistent statement properly offered to rehabilitate a witness does not constitute hearsay because it is not being offered to prove the truth of the matter asserted. Tenn. R. Evid. 801(c). This issue is without merit.

### III. Sentencing

In his final issue, the appellant contends that the trial court erred in imposing

9

the maximum sentence within the applicable range.[3]  Specifically, he complains that the court failed to enter findings of facts on the record regarding the applicability of mitigating factors and by erroneously applying one enhancement factor. Additionally, the appellant argues that he should have been considered for alternative sentencing.

A sentencing hearing was held on May 30, 1996.  Orlando Brown testified that he and his wife have been and remain the legal guardian of the victim in this case.[4]  Mr. Brown explained that, although their custody of the infant was initially temporary, the court eventually ruled that it was in the best interest of the child to remain in the Browns' care due to the appellant and his wife's failure to "meet whatever requirements they had to get him back.  They failed to pay child support. They never visited."  Brown related that the infant remained in a half body cast for about six to eight weeks after the incident.  Brown also stated that, because of the long drawn out battle over the custody of the child, psychological counseling was required.

Lynn Peachy, the appellant's mother, testified that the appellant was "raised in church" and "respect[ed] [her] as a parent."  She stated that the appellant has never been in any other trouble and "[h]e wouldn't even fight his brother back."  She further stated that the appellant was deserving of an alternative sentence.

The appellant testified on his own behalf.  He stated that, presently he is twenty-four years old, but, at the time of the incident leading to this conviction, he was only nineteen.  He is originally from New York State and enlisted in the Navy

---

[3]The offense of aggravated child abuse is a class B felony.  Thus, the applicable sentencing range for a range I offender is between eight and twelve years.  Tenn. Code Ann. § 40-35-112(a)(1) (1990).  Additionally, although irrelevant to the present case, we acknowledge that, effective July 1, 1994, aggravated child abuse of a child six years old or younger became a Class A felony.  Tenn. Code Ann. § 39-15-402(b) (1994 Supp.).

[4]Mr. Brown stated that his wife was the second cousin of the appellant's wife.

when he was eighteen upon graduation from high school. On the date of this offense, his occupational speciality was aviation electrician. After completing his enlistment period, he received a General Discharge under honorable conditions. Because this case was pending, the appellant was prohibited from re-enlisting. He stated that he has three children, not including the victim in this case. Although he expressed remorse to the court that his son was injured, he maintained that he did not commit this crime. The appellant stated that his wife was the "major child-care provider," while he attended school on the naval base. From the date of his discharge from the Navy until his conviction, the appellant was employed at Wal-Mart on Austin Peay Highway. On cross-examination, the appellant stated that, on the night of the incident, he heard noises that sounded like tapping at the window. When he arose to investigate, "[he] stepped on [his] daughter's toy and fell back on [the victim]. And that's how the femur got broken." He explained that, at the time of the incident, he was scared of losing his son, so he cast the blame on his daughter.

The presentence report confirmed that the appellant had no prior history of criminal conduct nor did the appellant use either alcohol or illegal substances. Attached to the report were sixteen letters from family, friends, and acquaintances attesting to the appellant's positive attributes.

The trial court imposed a sentence of twelve years in the Department of Correction, the maximum punishment for a range I offender.

When the length, range, or manner of service of sentence is challenged on appeal, this court conducts a *de novo* review conditioned upon the presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-201(d)(1990). This presumption only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the case before us, because of the

11

incomplete findings of fact by the trial court, we cannot apply the presumption. On

appeal, the appellant bears the burden of showing that the sentence imposed was

improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d)

(1990).


## A. Length of Sentence

The appellant first contends that the trial court failed to include on the record

whether it found any mitigating factors applicable. At the conclusion of the

sentencing hearing, the trial court stated that no mitigating factors were presented in

the presentence report, but did not explicitly recite whether or not the court found

any mitigating factors applicable. However, the court's written findings of fact reflect

that no mitigating factors were applicable. The Sentencing Act directs that

"[w]henever the court imposes a sentence, it shall place on the record either orally

or in writing, what enhancement or mitigating factors it found, if any . . . ." Tenn.

Code Ann. § 40-35-210(f) (1990). This issue is without merit.


Next, in determining the appropriate sentence for the appellant's conviction,

the trial court applied two enhancement factors, *i.e.*, the defendant treated the

victim with exceptional cruelty during the commission of the offense and the

personal injuries inflicted upon the victim was particularly great. Tenn. Code Ann. §

40-35-114(5), -114(6) (1990). The appellant contests the applicability of

enhancement factor (5), exceptional cruelty.


Initially, we acknowledge that to be applicable, enhancement factors must be

"appropriate for the offense" and "not themselves essential elements of the offense."

State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997) (citation omitted). Thus,

enhancement by Tenn. Code Ann. § 40-35-114(6), that the injuries inflicted upon the

victim were particularly great, is inapplicable to offenses where "serious bodily

injury" is an element of the offense. See Poole, 945 S.W.2d at 98; State v. Jones,

12

883 S.W.2d 597, 602 (Tenn. 1994); State v. Crowe, 914 S.W.2d 933, 939 (Tenn. Crim. App. 1995). Since "serious bodily injury" is an element of aggravated child abuse, as defined in the present case, use of enhancement factor (6) is erroneous.

However, in State v. Poole, our supreme court distinguished that "serious bodily injury" does not necessarily establish the enhancement factor of exceptional cruelty. Poole, 945 S.W.2d at 98. "In other words, the facts in a case may support a finding of 'exceptional cruelty' that 'demonstrates a culpability distinct from and appreciably greater than that incident to' the crime of [aggravated child abuse.]" Id. (citing Jones, 883 S.W.2d at 603). In such circumstances, "the trial court should state what actions of the defendant, apart from the elements of the offense, constituted 'exceptional cruelty.'" Id. (citing State v. Goodwin, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995)).

In the present case, the trial court did not make any findings to support application of this factor other than the injuries inflicted upon the victim. Although the victim suffered multiple injuries during his eleven week life, no proof connected the appellant to any injury other than the broken right femur. Moreover, albeit the appellant's actions were reprehensible and certainly cruel, a finding of "exceptional cruelty" is usually found in cases of long-term abuse or torture. See State v. Davis, 825 S.W.2d 109, 113 (Tenn. 1991). The facts before us do not implicate the appellant's involvement in a continuous pattern of abusive behavior towards the victim. Additionally, immediately after the incident, the appellant rushed the child to the emergency room for treatment. But see State v. Walton, No. 02C01-9610-CR-00321 (Tenn. Crim. App. at Jackson, Aug. 19, 1997) (upholding use of "exceptional cruelty" enhancement factor where defendant failed to seek treatment for victim). Thus, the facts which give any support to this factor are the same facts used to elevate the offense to aggravated child abuse under the law. This case involved no extended length of torture, no weapons, nor any unusual type of abuse. Beyond the

obvious cruelty inherent in every incident of aggravated child abuse, we find no evidence in the record to support a finding of exceptional cruelty. Thus, we conclude that the trial court erroneously applied this factor.

Notwithstanding these findings, we do find applicable enhancement factor (4), that the victim was particularly vulnerable because of age, and enhancement factor (15), that the defendant abused a position of private trust. Tenn. Code Ann. § 40-35-114(4), -114(15). See Poole, 945 S.W.2d at 96; State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995). Additionally, the facts clearly support some consideration of the combination of the appellant's lack of criminal history, good employment and social history, and military service as a mitigating factor. Tenn. Code Ann. § 40-35-113(13) (1990). See, e.g., State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995); State v. Joslin, No. 03C01-9510-CR-00299 (Tenn. Crim. App. at Knoxville, Sept. 22, 1997); State v. Overton, No. 02C01-9510-CC-00303 (Tenn. Crim. App. at Jackson, June 2, 1997); State v. Cotham, No. 01C01-9509-CC-00287 (Tenn. Crim. App. at Nashville, Dec. 5, 1996), perm. to appeal denied, (Tenn. July 7, 1997); State v. Ivey, No. 03C01-9509-CR-00292 (Tenn. Crim. App. at Knoxville, Dec. 3, 1996); State v. Yelloweyes, No. 01C01-9407-CC-00256 (Tenn. Crim. App. at Nashville, May 11, 1995), perm. to appeal denied, (Tenn. Sept. 25, 1995). In view of our finding that the trial court misapplied enhancing factors and failed to apply a mitigating factor, modification of the maximum sentence is necessary. Upon *de novo* review, after weighing the two applicable enhancement factors found and the non-statutory mitigator, we conclude that a sentence of nine years as a range I offender is justified. Tenn. Code Ann. § 40-35-210(e) (1990).

**B. Alternative Sentence**

Although the trial court found the appellant ineligible for probation, presumably because a sentence in excess of eight years was imposed, the court,

14

otherwise, failed to make any appropriate consideration and findings relative to the imposition of any other non-incarcerative sentencing alternative. Tenn. Code Ann. § 40-35-210(f). The appellant contends that he should have been considered for sentencing alternatives other than total incarceration.

Initially, we note that, because the appellant was convicted of a class B felony, he is not presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6) (1990). Moreover, the appellant is not eligible for a sentence involving probation because his sentence is in excess of eight years.[5] Tenn. Code Ann. § 40-35-303(a) (1990). See also Tenn. Code Ann. § 40-35-306 (1990). Thus, the only remaining alternative is a sentence to a community corrections program pursuant to the requirements of Tenn. Code Ann. § 40-36-106 (1990).

The appellant does not meet the eligibility requirements for community corrections participation prescribed in Tenn. Code Ann. § 40-36-106(a), (b), and (c). Only persons "who are convicted of non-violent felony offenses" are eligible for community corrections. Tenn. Code Ann. § 40-36-106(a)(3). Aggravated child abuse is a violent crime, therefore, the appellant cannot meet the requirements of subsection (a). However, even if ineligible under subsection (a), an offender may still be qualified for community corrections under subsection (c), if he demonstrates a special need that is treatable and could best be served in the community, *i.e.*, chronic alcohol and drug abuse or mental health problems. Tenn. Code Ann. § 40-35-106(c). The appellant has failed to establish a special need under subsection (c). Accordingly, the appellant is ineligible for a community corrections sentence. For these reasons, the only available sentence is one of total confinement.

---

[5]Effective July 1, 1994 a defendant convicted of aggravated child abuse is no longer eligible for probation. Tenn. Code Ann. § 40-35-303(a) (1994 Supp.).

## IV. Conclusion

For the reasons discussed herein, the judgment of conviction entered by the trial court is affirmed. However, upon *de novo* review of the appellant's sentence, we modify the sentence imposed by the trial court from twelve years to nine years to be served in the Department of Correction. This case is remanded to the trial court for entry of an order modifying the sentence in the manner consistent with this opinion.

_____
DAVID G. HAYES, Judge


CONCUR:


(See separate concurring opinion)
JOHN H. PEAY, Judge


_____
PAUL G. SUMMERS, Judge